```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ALABAMA
                     MIDDLE DIVISION
```

LESLIE WILEY,                }
                             }
    Plaintiff,             }
                             }      CIVIL ACTION NO.
v.                           }      03-AR-0008-M
                             }
MARIE MANNING, et al.,       }
                             }
    Defendants.            }

ENTERED
APR 1 4 2004

### MEMORANDUM OPINION

    Before the court is the motion of defendants, Marie Manning ("Manning"), Tom Sanders ("Sanders")[1], and the St. Clair County Board of Education ("the Board"), for summary judgment. Plaintiff, Leslie Wiley ("Wiley"), a teacher employed by the Board from 1999 to 2002, filed this action on January 3, 2003 under 42 U.S.C. § 1983 alleging (1) that she was terminated in violation of the First and Fourteenth Amendments to the United States Constitution, and (2) that Manning and the Board failed to rehire her, also in violation of the First and Fourteenth Amendments.

### Background

    Wiley was employed by the Board as a kindergarten teacher at Springville Elementary School ("SES") in Springville, Alabama, for the 1999-2000, 2000-2001, and 2001-2002 school years. In April of 2002, Joyce Voelzke ("Voelzke"), the principal of SES, recommended

---

    [1] Sanders was sued in his official capacity as the current Superintendent of Education of St. Clair County.

1



to Manning, the superintendent of St. Clair County at that time, that Wiley's contract of employment with the Board not be renewed for the 2002-2003 school year. Doc. 17 ex. 3, Voelzke Dep. at 6-7. Voelzke felt that Wiley's contract should not be renewed because of Wiley's uncooperative attitude, and because of her violation of Board policies. *Id.* at 17. On May 20, 2002, Manning recommended to the Board that Wiley's contract not be renewed, and the Board unanimously adopted Manning's recommendation. Doc. 17 ex. 8, May 20, 2002 Board Minutes at 4-5.

At the next Board meeting, on June 3, 2002, Lisa Taylor-Cohron ("Taylor-Cohron"), a physical education teacher at SES, and Lisa Battles, a representative of some concerned parents of SES students, spoke in support of Wiley, and urged the Board to reconsider its decision to terminate Wiley. After hearing from these individuals, the Board promised to meet with Voelzke and to "review the decisions that were made." Doc. 26, June 3, 2002 Board Minutes at 2. At the Board meeting on June 27, 2002, the Board minutes reflect that Taylor-Cohron again spoke on behalf of Wiley, and told the Board that Wiley supporters were still waiting on a response from it. Doc. 26, June 27, 2002 Board Minutes at 1. After the Board meeting, Manning and two Board members, Drew Goolsby ("Goolsby") and Scott Suttle ("Suttle"), met with Voelzke to discuss her recommendation that Wiley's contract be non-renewed. Doc. 17 ex. 5, Suttle Dep. at 12-14; Doc. 17 ex. 6, Goolsby Dep. at

10. At the next Board meeting, on July 8, 2002, Manning reported to the Board on the subject of Wiley's non-renewal. Manning submitted a memorandum explaining that she had conducted a review of the procedures surrounding the non-renewal of Wiley's contract as requested at the June 3, 2002 Board meeting. Manning's memorandum stated that "[b]ased upon this review, I find that all policies and procedures were followed without error." Doc. 26, July 8, 2002 Board Minutes at 1-2. The memorandum also explained that Wiley could apply for any position in the school system, and that Manning would forward any recommendations she received for Wiley's employment to the Board for its approval. *Id.*

During the Spring of 2002, because Manning was retiring as superintendent, a primary election was held to pick a candidate to succeed her. In the primary, Sanders, Vicki Stanford ("Stanford"), and Bart Arnold ran for their parties' nomination for superintendent. Sanders and Stanford ran against each other in a runoff election. Sanders won the runoff, and went on to win the general election. Sanders is the current superintendent of St. Clair County. Wiley supported the candidacy of Stanford, while Manning supported the candidacy of Sanders. Stanford spoke in support of Wiley at a Board meeting sometime after the decision to non-renew Wiley.

## Analysis

In her response to the Rule 56 motion, Wiley abandoned her

wrongful termination claim. Wiley's only remaining claim is that Manning and the Board failed to rehire her because of her support of Stanford in the primary election. Wiley relies exclusively on the following dialogue from her deposition:

> Q: ...Do you have any reason to believe that Ms. Manning took any action or made any recommendation or failed to make any recommendation because of your involvement in any sort of political activity?
>
> Wiley: The only statement that has ever been told to me was that after Ms. Stanford spoke on my behalf at a Board meeting, Mr. Goolsby told me that Manning would not discuss Leslie Wiley any further.
>
> Q: So from that what did you infer?
>
> Wiley: I inferred that Ms. Stanford speaking on my behalf hurt me in Ms. Manning's eyes.
>
> Q: But this Board meeting was after the fact of your non-renewal, correct?
>
> Wiley: Correct.

Doc. 17 ex. 2, Wiley Dep. at 47. Defendants argue that the decision not immediately to rehire Wiley had nothing to do with Stanford's speaking on her behalf.

When a government employee alleges that she was not rehired in retaliation for her political affiliation or for expressing her political beliefs, the court applies the two-part causation analysis set out in *Mt. Healthy City School Dist. Bd. Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568 (1977). The employee must first demonstrate that her protected conduct was a "substantial" or "motivating" factor in the decision not to rehire her. *Id.* at 287.

4

If the employee carries that burden, then the government employer must demonstrate "by a preponderance of the evidence that it would have reached the same decision as to [the employee's] reemployment even in the absence of the protected conduct." *Id.* In evaluating whether the protected conduct was a substantial or motivating factor in the decision not to rehire the employee, the court examines the record as a whole in order to determine whether the employee has presented sufficient evidence for a reasonable jury to conclude that the protected conduct was a substantial or motivating factor in the decision not to rehire the employee. *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1291 (11th Cir. 2000). In its examination of the record, the court should consider a number of factors. First, comments made or actions taken by the employer that indicate its action related to the protected conduct. *Id.* at 1291 n.20. Second, the temporal proximity between the protected conduct and the adverse employment action. *Id.* Third, whether the asserted legitimate reasons for failure to rehire the plaintiff were pretextual. *Id.* Fourth, whether the asserted reasons for failing to rehire varied. *Id.* Fifth, circumstantial evidence of motive. *Id.; see also Burleson v. Colbert County-N.W. Ala. Healthcare Auth.*, 221 F.Supp.2d 1265, 1276 (N.D. Ala. 2002).

Prior to looking at each of the factors, it is important to note that Wiley's case is premised upon her misunderstanding of the Board policy for "rehiring" employees. Wiley indicates that

Manning was responsible for deciding whether or not to rehire her. This is not how rehiring works in the St. Clair County school system. The only way for Wiley to be rehired in this school system was to receive a recommendation from an administrator of the school looking for a teacher. Manning explained the procedure for rehiring Wiley in a meeting the two of them had after the non-renewal. Manning explained:

> It had become my understanding that Ms. Wiley was wanting to be reappointed to her position. And I felt that Ms. Wiley needed to understand that the only way that she could be rehired would be to go through the interview process and write a letter of interest for any position in order to be interviewed [by administrators at the schools to which she applied]. I wanted her to know that so that she could apply for any position in which she was interested.

Doc. 17 ex. 4, Manning Dep. at 21. Wiley interviewed for a position at Springville Middle School, but the principal there did not recommend her for the job. Doc. 17 ex. 2, Wiley Dep. at 71-73; Doc. 17 ex. 4, Manning Dep. at 23-25. There is no evidence that Wiley was considered for reemployment by Manning or by the Board. Manning's mandate from the Board on June 27, 2002 was to conduct a review of the procedures used in coming to the decision to non-renew Wiley's contract. It was not to decide whether or not to rehire Wiley. Based on her review, Manning found that there was nothing wrong with the procedures used to come to the decision to non-renew Wiley's contract. Manning's conclusion in this regard is firmly buttressed by the fact that Wiley makes no challenge to the

6

reasons given for non-renewing her contract, and no challenge to the procedures used in coming to that decision. It is undisputed that neither Voelzke, Manning, nor the Board knew of Wiley's involvement in Stanford's campaign at the time they decided to non-renew Wiley's contract. Doc. 17 ex. 3, Voelzke Dep. at 35-36; Doc. 17 ex. 4, Manning Dep. at 29; Doc. 19, Affidavits of Jerry Sue Brannon, Terry Green, and Scott Suttle. Wiley has not alleged that Manning's review, along with Goolsby and Suttle, was tainted in any way.

Assuming that Manning did take an adverse employment action with respect to Wiley, defendants are still entitled to summary judgment. An application of the five factors outlined above demonstrates that no reasonable jury could conclude that Wiley's support of Stanford was a substantial or motivating factor in the decision to not rehire Wiley. In applying these factors, the court will assume that Wiley's report to the Board that she found no error in the procedures used in coming to the decision to non-renew Wiley's contract can serve as some sort of evidentiary basis for Wiley's failure to rehire claim. First, Wiley relies only on the deposition excerpt to demonstrate that the decision not to reemploy her was related to Wiley's protected conduct. Wiley admits that she has no other evidence of animus related to her support of Stanford on the part of Manning or anyone else. Doc. 17 ex. 2, Wiley Dep. at 45-46, 54-55, 61. When this comment is read in the

context of the entire record, as the Eleventh Circuit law requires, it is not within the range of reasonableness to conclude that the decision not to rehire Wiley was related to her protected political activity. The statement itself gives no indication that it was related to Stanford's speaking on Manning's behalf. There is no evidence that indicates that Manning knew that Wiley supported Stanford's campaign, and no evidence that Manning even cared if Wiley supported Stanford. After Stanford spoke on behalf of Wiley, it is undisputed that Manning, Goolsby, and Suttle spoke with Voelzke concerning the reasons for non-renewing Wiley's contract. Rather than ceasing conversation on the topic, Manning reviewed the procedures followed and reasons articulated for non-renewing Wiley's contract. Wiley makes no accusation that Manning, Goolsby, or Suttle had an illegal motive during the investigation, or that they did not pursue the investigation diligently. Wiley admits that both Goolsby and Suttle supported the campaign of Stanford. Doc. 17 ex. 2, Wiley Dep. at 85-86. It is also undisputed that after Stanford spoke on Wiley's behalf, Manning met with Wiley and encouraged her to apply for any available jobs within the St. Clair County school system. Doc. 17 ex. 2, Wiley Dep. at 50-51; Doc. 17 ex. 4, Manning Dep. at 21-22.

Second, the temporal proximity between the time Manning allegedly gained knowledge of Wiley's support of Stanford and the alleged adverse employment action was close. The Eleventh Circuit

8

explained in *Mize v. Jefferson City Bd. Educ.*, 93 F.3d 739, 745 (11th Cir. 1996), that "[i]t does not follow, however, that every time a person engages in constitutionally protected activity within a short time prior to an adverse employment decision that an inference may reasonably be drawn that they were related." In the instant case, the decision whether or not to rehire Wiley for her previous position would have inevitably been made sometime during the Summer of 2002 prior to the start of school in the Fall of 2002. The fact that Stanford spoke on her behalf, and Wiley was not rehired shortly thereafter is not probative of the issue of proximate causation.

Third, Wiley has not demonstrated that the reasons for failing to rehire her were pretextual. There were no specific reasons given for failing to rehire Wiley. Manning, Goolsby, and Suttle simply reviewed the procedures used to come to the decision to non-renew Wiley's contract. Manning reported to the Board that she found no error in the procedures. Wiley does not challenge the review conducted by Manning, Goolsby, and Suttle, nor does Wiley challenge the legitimate reasons Voelzke gave for recommending the non-renewal of her contract. It is difficult, if not impossible, to conclude that non-pretextual or legitimate reasons for non-renewal cannot serve as non-pretextual, legitimate reasons for not rehiring.

Fourth, the reasons asserted for not rehiring Wiley have not

varied. Manning reported to the Board that she found no error in the procedures used in coming to the decision to non-renew Wiley's contract. Manning has not varied from that assessment. It is also worth noting that the reasons given for the non-renewal of Wiley's contract, uncooperativeness and violation of Board policies, also have not varied.

Finally, other than her deposition statement, Wiley has not presented any circumstantial evidence of a proscribed motive. The court has already noted the problems with that statement.

Even if Wiley were able to demonstrate that her support of Stanford was a substantial or motivating factor in the decision not to rehire her, summary judgment still would be called for. While defendants did not argue the issue, the evidence establishes without serious dispute that the Board would have reached the same decision in the absence of Wiley's support of Stanford. As noted previously, Wiley does not dispute the legitimate reasons for the non-renewal of her contract, she does not dispute that her support of Stanford was not a factor in the initial decision to non-renew her contract, and she does not dispute that the procedures used in coming to the decision were proper. Wiley also overlooks the fact that, along with Manning, Goolsby and Suttle, supporters of Stanford, participated in the review of Wiley's non-renewal. Under these circumstances, the court sees no triable issue as to whether the defendants would have come to a different decision but for

Wiley's support of Stanford.

In evaluating a Rule 56 motion, all inferences drawn from the evidence must be done so in a light most favorable to the nonmoving party. *Mize,* 93 F.3d at 742. However, the court need only draw an inference that is "rational" or "reasonable." *Id.* at 743 (*citing T.W. Elec. Serv., Inc., v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987)). The inference that Wiley has asked this court to make from Manning's statement is neither rational nor reasonable.

## Conclusion

By separate order, the defendants' motion for summary judgment will be granted.

DONE this _14th_ day of April, 2004.

/s/ William M. Acker
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE